SARAH BOERUM and others, Respondents, *v.* MARY S. SCHENCK, Defendant and Appellant.

Where a trustee to sell, or one having a power of sale in trust, bids in the property at the sale for himself, the transaction is not void but voidable at the election of the beneficiary (when *sui juris*), and the latter may, if he choose, hold the trustee to the consequences of his act.

And where there is no legal incapacity in the *cestui que trust*, and he has full knowledge of all the facts, and is free from undue influence arising out of the relation of the parties, a clear and unequivocal affirmance of the sale may conclude him.

Ordinarily, the acceptance of the proceeds of such sale by the beneficiary with full knowledge would be such an affirmance. But, as between the immediate parties, the act is open to explanation, and where such proceeds are received under protest and with an express reservation of the right to controvert the validity of the sale, it does not estop or preclude a subsequent proceeding by the beneficiary to disaffirm and obtain a resale. (GROVER and DANIELS, JJ., *contra.*)

Where one of several beneficiaries has previously brought an action against the trustee to set aside the sale, and judgment has gone against him therein, such judgment is a complete bar, as to him ; and although upon a resale, ordered in a suit by the other beneficiaries, under the power of sale, the entire property, and not their undivided interest therein, must be resold, yet the trustee will be entitled to that portion of the avails which would have otherwise belonged to that beneficiary, were it not for the former judgment against him.

J. S. by his will appointed his son, C. S., executor, and empowered and directed him to sell certain lands, and with the proceeds to pay certain le a- cies, and if there should be a surplus, to divide it equally among his children. The testator left the executor, C. S., and another son, and four daughters, three of them *femmes covert*, and the fourth unmarried and imbecile. C. S. in 1845 made a sale at public auction under the power, but was himself the purchaser through a third party. In 1846 he rendered his account of the estate to the surrogate ; there was paid over by the surrogate to the other son and to the three married daughters their shares of the surplus proceeds arising on such sale, they all, however, objecting to the sale and reserving, in their receipts for the money they gave to the surrogate, the right to contest the sale.

In 1847, C. S. died, leaving two children, the defendants. Previous to 1852, the other son and the imbecile daughter died without children, both intestate and unmarried. An action had been brought in 1849, by a married daughter L. and her husband, against the present defendants to annul the sale, in which, judgment was rendered dismissing the complaint.

In the present action, commenced more than ten years after the sale, by the three surviving, sisters against the defendants as the heirs of C. S., praying that it be set aside and a resale of the property under the power be had.— *Held*, that the lapse of time was not, even in equity, any objection to granting the relief, and further (GROVER and DANIELS, JJ., *contra*), that the receipt from the surrogate of the apparent surplus proceeds of the original sale, even by those *sui juris*, being under protest and with a reservation of their right to contest the sale, did not estop them in the present action ; but that the daughter L., plaintiff with her husband in the former suit for the same relief, was barred by the judgment therein, as to the interest she then had, but not as to those since acquired by her as one of the heirs of her deceased sister and unmarried brother.—*Held*, therefore, that a resale should be had ; and that of the proceeds, the plaintiffs except L., should be paid each one-fourth, as children of the testator and also as heirs of the deceased sister and unmarried brother, after deducting the amounts received by them respectively from the surrogate under the previous sale ; and that the share of the daughter L., except that portion coming to her as one of the heirs of the deceased sister and unmarried brother, should belong to the defendants, and that the defendants should receive the remaining fourth of such proceeds and the amounts deducted from the other shares, as paid by their father C. S., on the previous sale.

(Cause argued June 27th, 1869, and decided September 25th, 1869.)

JOHN SCHENCK died in July, 1844. By his will he appointed his son, Charles Schenck, executor ; and, among other things, he provided as follows : " Item. I empower and direct my executors to sell all the land now owned by me, which I purchased from Captain Williams, at public or private sale, and add the proceeds of the sale to the money which I have at use, together with $200 to be paid as a charge by my son, Charles. From and out of the said sum, collectively, my executors are directed to provide for the several sums hereinbefore bequeathed, and if there should be any deficiency in the amount required, then, a ratable proportion must be deducted from each bequest ; and if there be a surplus, it is my will that the same be equally divided between all my children."

The children of the testator, living at his death, were six in number, viz. : Sons, Charles and Stephen ; daughters, Sarah (wife of Jacob Boerum), Matilda (wife of Ralph Lane), Elizabeth (wife of Jeremiah C. Brower), and Gertrude (called " Gitty"), an idiot.

In January, 1845, Charles Schenck (the son and executor) advertised the land, which embraced about nineteen acres, for sale; and on the 12th March, 1845, having previously employed an auctioneer, William Conselyea, and arranged with him, that, if the bids for the property should not exceed $350 per acre, the same should be struck off to him, the land was offered at auction. The auctioneer employed Joseph Conselyea to purchase the property for the executor, and it was sold (nominally) to him, for a price, in the whole less than the amount of such limit; whereupon, on the 15th March, 1845, Charles Schenck, the executor, executed a deed to Joseph Conselyea, expressing, as the consideration, the sum bidden at the auction sale; and, on the same day, Joseph Conselyea executed a deed to the said Charles Schenck for the same apparent consideration; but no money was, in fact, paid or received by either of them.

Some part of the amount thus ostensibly received, as upon a sale of the premises, was paid by the executor toward the legacies in the will given, and an apparent surplus remained for distribution among the children of the testator.

On application for the final settlement of the accounts of the executor, the children and the husbands of the daughters respectively being cited, the executor, on the 23d March, 1846, rendered his account, in which he had charged himself with the sum for which he had ostensibly sold the land (viz., $6,644.50), and interest thereon, and showing a surplus of $4,468.38 for distribution, which, after deducting certain previous advances which he had made to his sisters, he paid to the surrogate.

His brothers and sisters objected to the sale so made by the executor, and declined to receive the money so paid by the executor, as and for their interest in the lands, or share of its proper proceeds; but afterward, in March, 1847, being advised by counsel and by the surrogate that they could do so without affecting their right to impeach the said sale, Stephen Schenck, Ralph Lane and wife, Jeremiah C. Brower and wife, and Sarah Boerum (her husband being out of the State) received their several shares as distributed, severally giving to the

Statement of case.

surrogate a receipt declaring in its terms that "it shall not prejudice any claim we or either of us may have against the said executor, or against the estate of the said John Schenck, deceased, under his said will, or our right to controvert the validity of the sale of the said real estate by the said executor, or our interests respectively in the said real estate."

In March, 1848, on a petition to which Gitty Schenck made her mark, and which was verified by oath administered to her, in which petition she denied that she was imbecile and incapable of taking care of her estate, an order was granted by a judge of the Supreme Court, directing the surrogate to pay to her or her solicitor the sum awarded to her on the said distribution, and it was paid to her solicitor. The executor, Charles Schenck, took possession of the land, and remained in possession until January 23d, 1847, when he died, leaving a widow, since deceased, and two children, Charles and Mary S. Schenck, who were defendants in this suit; the son, Charles, having died, *pendente lite*, the said Mary S. is now sole defendant.

In March or April, 1849, Ralph Lane and wife commenced an action in the Supreme Court against the then widow and children of the deceased executor, averring the facts, chiefly as above stated respecting the sale, claiming that it was an invalid execution of the power of sale, and alleging that it was fraudulently and collusively made by concert with the auctioneer and Joseph Conselyea, with intent to give title to the executor at a price less than its value; and claiming that the deeds executed on such pretended sale, and the conveyance to the executor, should be set aside, the lands sold, and the proceeds divided. The defendants answered, denying all fraud, alleging that the land sold for its full value, that the sale was actual, and not formal merely, and that the land was purchased by Charles Schenck from the actual purchaser at that sale in good faith; and finally, that the said plaintiff, Lane, and his wife, with full knowledge of all the facts and circumstances relative to the sale, and the conveyances afore said, received the share of the said wife in the proceeds of

sale, and thereby acquiesced in said sale. This action was tried at Special Term, and upon what seems in part a statement or finding of facts, in part opinion and reasons for its conclusion, but apparently filed as a decision, the complaint of the plaintiffs was dismissed with costs, and the dismissal was placed by the judge in such decision, on the ground that by accepting the money the plaintiffs affirmed the sale, and are concluded notwithstanding the terms of their receipt given therefor.

The judgment rendered, thereupon, stands unreversed.

Gitty Schenck died unmarried, intestate, in July, 1849.

Stephen Schenck also died intestate, leaving no wife nor issue, in 1852 or 1853.

Jacob Boerum, the husband of the plaintiff Sarah Boerum, is also dead.

On or about the 12th of October, 1855, this action was commenced by the said Sarah Boerum, and the said Lane and wife, and Brouwer and wife, to set aside the before mentioned sale and conveyances, and to have the lands sold and the proceeds divided.

Upon a finding of the facts in substance as above stated, judgment was rendered in the court below for the plaintiffs, setting aside the sale and the deeds executed by the executor to Joseph Conselyea, and by the latter to the executor, appointing a trustee to sell the property, requiring an account of the rents and profits received by Charles Schenck, the executor in his lifetime, or by the defendants since his decease, but crediting the disbursements made on account of the land and the value of any permanent improvements, directing that the balance of such account be added to the proceeds of sale; that the costs of suit be paid out of the fund; that there be allowed to the defendant the amount awarded by the surrogate, as the distributive share of the plaintiffs, and of Stephen and Gertrude Schenck, with interest; and that the residue be divided and paid, one-fourth to the plaintiff, Sarah Boerum, one-fourth to Lane and wife, one-fourth to Brouwer and wife, and the residue to the guardian of the defendants.

Such account having been taken and confirmed, James C. Brown was appointed trustee to make the sale of the land. On appeal this judgment was affirmed in the Supreme Court, in General Term for the second district, and the defendant appealed to the Court of Appeals.

*John H. Reynolds,* for the appellant, insisted that the sale in 1845 was not void, but merely voidable. That a court of equity would not vacate the sale after such lapse of time; that the plaintiffs were all estopped by receiving the pro ceeds of the sale; and that as to the plaintiff, Lane, the previous judgment against her was a bar to this action.

*George F. Comstock,* that the sale was an absolute nullity, cited *Buffalo Works* v. *Ins. Co.* (17 N. Y., 403); *Downes* v. *Grazebrook* (3 Merivale, 200); *Van Epps* v. *Van Epps* (9 Paige, 238, and notes); 1 Story's Eq., § 322, and notes; *Coal Co.* v. *Sherman* (30 Barb., 553). That there was no estoppel arising out of the receipt by the beneficiaries of the proceeds, he cited *Pickard* v. *Sears* (6 A. & E., 469); *Dalziel* v. *Odell* (3 Hill, 225); *Frost* v. *Insurance Co.* (5 Den., 157); *Lawrence* v. *Brown* (5 N. Y., 395); *Chautauqua Bk.* v. *White* (2 Seld., 237); *Davis* v. *Allen* (3 N. Y., 168); *Catlin* v. *Grote* (4 E. D. Smith, 296). The suit is not barred by any statute or rule of limitation, the plaintiffs being *femmes covert,* and necessary parties. (*Schuyler* v. *Hoyle,* 5 Johns. Ch., 196; *Langham* v. *Neumy,* 3 Ves., 467; 5 Vesey, 515; 10 Vesey, 578; 9 Vesey, 174.)

WOODRUFF, J.   It cannot for a moment be contended, that the sale made by the executor in this case was binding upon the other children of the testator, who held the legal title and were interested in the execution of the power of sale given to the executor by the will, and entitled to share the proceeds of such sale. If this is not formally conceded by the counsel for the appellant, the contrary is not insisted upon. Although the sale was in form to Joseph Conselyea, it was in fact a device of the executor to buy the land himself by the inter-

position of a third person, who should receive the conveyance for him and immediately convey the land to such executor.

A trustee or the donee of a power in trust, cannot sell to himself either directly or indirectly; and this circuitous mode of effecting the transfer of the legal title cannot avail for that purpose.

It is unnecessary, at this day, to discuss the grounds upon which this important rule for the protection of *cestui que trusts* and beneficiaries against fraud or bad .faith in the trustee depends, and. it is needless to recall the multitude of cases, by which the rule is recognized and firmly established.

Nor does it affect the right of the beneficiaries to repudiate the transaction, that there may have been no actual intent to cheat or defraud them. In the present case, although there was in the complaint a charge of some ·artifice in changing the day appointed for the sale, and in selling in too large parcels, so as to mislead and prevent competition, and ·a charge that the executor acted fraudulently in the matter, no such fraud is found; and the whole case proved is entirely consistent with an honest effort on the part of Charles Schenck, the executor, to procure for the property the largest price which the property would bring at an open, fairly conducted public sale, and with an honest belief that he might; if he pleased, lawfully instruct the auctioneer to cause the property to be bid in for himself, if the price bidden should not equal a sum at which he (being himself one of those entitled to share the proceeds) was willing to part with the property. The case therefore does not involve any impeachment of his integrity, or his purpose to discharge his trust with fidelity and with just regard to the interests of his brother and sisters.

This, however, does not avail to secure to him the title. The rule is inflexible; he was, by his fiduciary character, incapacitated to purchase, and neither upright intention nor the payment of a fair price will overcome the impediment.

But, on the other hand, the right to avoid the sale is the privilege of the *cestui que trusts* or beneficiaries only. They

have an election to affirm it, if they see fit; oftentimes, in such cases, it may be for their interest to do so, and they may hold the trustee to the consequences of his act. Hence, in the present case, if the property had greatly depreciated, the executor could not have denied the sufficiency of the execution of the power of sale and refused to account for the sum bidden, as the proceeds of a sale.

In other words, the conveyance by the executor to Joseph Conselyea, and by the latter to the executor, might operate, according to their legal import, to transfer the title. The sale was not void, but voidable only at the election of the beneficiaries.

That election they declare by the present action; and that election is operative to avoid the sale and those conveyances, unless the plaintiffs, by something subsequent thereto, are concluded.

Three grounds are relied upon to defeat the plaintiff's action, viz.: Lapse of time; receipt of their shares of the purchase money in affirmance of the sale; and as to the plaintiffs, Lane and wife, a former judgment against them denying their claim to set aside the sale.

1. As to the lapse of time; it will suffice to say, that, irrespective of other considerations, the sisters of the executor, who are plaintiffs in this action, were each of them *femmes covert* at the time of the attempted execution of the power of sale; the other sister was an idiot; and by the death of the latter and of Stephen Schenck, before this action was commenced, the further period of eighteen months was added to the statute limitation (so far as the plaintiffs derive their right through such deceased). The statute limitation therefore does not bar the action.

So far as the lapse of time is relied upon as importing acquiescence in the sale, which should lead a court of equity to refuse its interposition, the answers are, first, the coverture of the female plaintiffs; and, second, the evidence that there has been no acquiescence in part, but dissatisfaction with, and objection to the sale, while on the part of the executor, he has not

been misled, or been shown to have placed himself in any new relation to the subject, in any reliance upon the supposed assent to the transaction by the other parties.

2. As to the receipt of the money, which is claimed to be an affirmance of the sale.

It is not necessary to deny, nor do I think it can be truthfully denied, that an acceptance by the beneficiary of the proceeds of a sale made by a trustee or donee of a power indirectly to himself, may operate as an affirmance of the sale, and as such may conclude the beneficiary. The beneficiary might consent to such a sale before it was made, and there is no legal nor equitable objection to his or her affirmance thereof afterward. But there must exist no legal incapacity; the act must be voluntary, with full knowledge of all the facts, and be free from undue influence arising out of the relation of the parties; and the act must be clear and unequivocal, fairly indicating an intent to affirm the transaction.

Ordinarily, the acceptance of the money, with full knowledge, and by persons free from disability, would be such an affirmance. But, as between the immediate parties, the act is open to explanation; and it can have no characteristic of an estoppel, unless it was understood and acted upon as an affirmance by the party insisting upon it as an affirmance.

In the present case, Gertrude Schenck was an idiot, and the plaintiff, Sarah Boerum, was a *femme covert*, acting without the presence or consent of her husband; and therefore as to them, there has been no affirmance, apart from the grounds applicable alike to Mrs. Boerum and the other plaintiffs.

But Stephen Schenck, Lane and wife, and Brouwer and wife were competent to act; they had full knowledge of the facts, and they received their shares of the money upon the terms expressed in their receipt therefor.

Their acceptance of the money was expressed to be on the condition, in substance contained in the receipt, that it should not be deemed an affirmance of the sale, nor prejudice their right to set it aside, or their interest in the premises.

This act is insisted upon, nevertheless, as an estoppel, and

it is argued, that a voluntary acceptance of the proceeds of sale estops the beneficiary to dispute its legality and effect; and therefore a provisional acceptance must so operate, because the proviso is inconsistent with the act.

Such a receipt has none of the characteristics of an estoppel. It is a mere consent to receive the money claimed to be the proceeds of a valid sale, but with a reservation of the right to contest that validity; or in another form, with an exclusion of the otherwise apparent and implied intent thereby to affirm such validity. Such a receipt admits nothing; it misleads no one; it can work no fraud upon any person. It is not claimed to be a legal or technical estoppel; and not one of the requisites of an equitable estoppel or *estoppel in pais* can be found in it.

I know of no possible objection, legal or equitable, to such an arrangement between the parties interested in this or any similar transaction. Cases may easily be suggested, in which claimants receive money pending a litigation, or before suit, with similar reservations or conditions, and litigation, nevertheless, proceeds to the establishment of their rights, unaffected by such receipt. The payment of the money by the executor into the hands of the surrogate did not affect the rights of either party; and in paying it out to these parties, he only acted as the agent of the executor, or of his representatives.

It is entirely obvious, that the beneficiaries were claiming that the land was of much greater value than the price allowed therefor by the executor; and upon that idea, the payment wrought no prejudice to the executor, since, on a resale, a larger sum would be due to these parties, which the money then received would in part satisfy.

I am clearly of opinion, that the acceptance of the money should be permitted to operate according to its actual intent, and the understanding upon which the written instrument, declaring its receipt and the terms thereof, was given and received.

In this view of the subject, neither of the beneficiaries are barred of this action by reason of the alleged affirmance of the sale by an acceptance of the proceeds.

3. As to the former judgment, I am not able to discover any sufficient ground upon which to deliver the plaintiffs, Lane and wife, from the effect of its existence in the former action, against them and in favor of the present defendant, on the precise claim which is made in their favor in this action. If I am right in the views already expressed, that judgment was erroneous ; but no appeal was taken therefrom, and it stands unreversed and in full force. The judgment was pronounced on the merits, and not upon any collateral issue, for no such issue was raised by the answer therein. It is, therefore, entirely clear that they could not maintain an action in their own behalf, founded on their original title, to share the proceeds of sale. The former judgment concludes them. Such was the opinion of the court below, and nothing suggested on their behalf raises in my mind any doubt of the correctness of that opinion.

But it is equally clear that such judgment only estops them from claiming under rights existing or claimed to exist in their favor, when that suit was brought. Gertrude Schenck was upon no possible ground concluded. At the time of her death, she had the plainest conceivable right to impeach the sale, demand a re-sale and claim her share of the proceeds. That right passed to her representatives, and was acquired by Mrs. Lane, after the former suit was brought. That right was neither directly nor indirectly in issue nor the subject of adjudication in that action. The same is true of the right or interest devolved upon Mrs. Lane by the death of Stephen Schenck, one or two years after the judgment was rendered.

It follows, that the sale and conveyances in question were properly set aside, and a re-sale ordered. It was properly held that the power of sale must be executed, if at all, by a sale of the property in its entire interest, and not in undivided parts. No one of the beneficiaries could require that his or her undivided share be sold separately, and if either had the right to require a re-sale, it was to require a sale of the whole ; not necessarily in one parcel, nor, as the case may be, at one time. The time and manner of sale (whether in single lots or parcels) rested in sound discretion, but no sale of an undivided interest

would be a due execution of the power. If, therefore, all the beneficiaries, save one, were concluded by an affirmance of the sale, or even by a release, that one would be entitled to an execution of the power by a sale of the whole property.

It remains to inquire in what shares or proportions the proceeds of sale should be divided.

On this point, my conclusion is, that the judgment below proceeded upon an erroneous view of the consequences of holding either party entitled to compel a re-sale. And although the court below held, that neither the plaintiffs (Lane and wife) nor Brouwer and wife were, in virtue of their original shares, entitled to compel a re-sale, but on the contrary, were concluded, by the acceptance of the money and by the former judgment; still, as Mrs. Boerum was not so concluded, a re-sale at her instance operated to reinstate them in their original position, and to entitle them to share the proceeds to the same extent, as if they had not affirmed the former sale.

Or, in another mode of stating it, inasmuch as the power of sale cannot be executed by a sale of an undivided share to satisfy the claim of Mrs. Boerum, the sale must be for the benefit of all the parties, according to their original interest in the proceeds.

No such consequences result from the premises, and no reason can, I think, be assigned for such a conclusion, that could not be alleged of the effect of the most distinct and unequivocal affirmance of the former sale by one of the parties in interest.

For example, suppose the brother (Stephen Schenck) had originally consented that the executor should acquire the title ; had bargained with him, that, so far as his interest was involved, he might have the property at the price at which it was struck down ; that an auction should be had, and if no person bid a greater sum, the executor should take the property through a conveyance to and from a third person, and all was done in precise accordance with the previous arrangement ; and thereupon Stephen Schenck, with intent to

affirm and ratify the transaction, accepted his share of the money.

As to him, the transaction would be valid and binding. He could not thereafter be permitted to claim the contrary or to demand a re-sale, and yet his sisters would not be bound. As to them, the sale would not be binding. They could compel the executor to execute the power, and could treat him (as he had in part become, by the formal transfer of the legal title to him) as trustee, holding the legal title subject to the execution of the power by a sale for their benefit; and it would be true then as now, that the power must be executed by a sale of the whole, and not of any undivided interests. Nevertheless, on this distribution of the proceeds, the executor would stand by subrogation in the place of Stephen Schenck. He could no more claim a share in the proceeds than he could claim an interest in the land or a right to its re-sale. Indeed, it is because he has no interest in the proceeds, that he could not require such re-sale.

Whether, in such case, the affirmance of the sale by Stephen be regarded as operating to transfer his interest to the executor, or as against the executor, to bar or conclude him, the result is the same. He is concluded of all claim and interest in the land, and, therefore, in its proceeds.

Now, although I think the former action was erroneously decided, its effect as a bar to the claim of Lane and wife is just as conclusive as if they had released the right therein asserted. True, it does not operate as a covenant estoppel to cut off rights subsequently acquired; but in respect of the interest then claimed, to wit, one-sixth of the proceeds, it is final.

The result is, that the plaintiff, Sarah Boerum, is entitled to one-fourth of the final surplus to be divided. Brouwer and wife to one-fourth. Lane and wife to only such share as vested in Mrs. Lane by the death of Gertrude and Stephen Schenck, viz., one-fourth of one-third, or one-twelfth, and the residue remains to the defendant.

If I understand the judgment below, an error in its detail

is found in it, which must be the result of inadvertence. It directs that the proceeds of sale, and the balance of the account of the rents and profits be applied to repay to the defendant only the several amounts paid to the plaintiff and Gertrude, and Stephen Schenck, on the distribution before the surrogate, and interest thereon, and that the residue be applied to the costs and final distribution between the plaintiffs and the defendant.

It is obvious that this is unjust to the defendant; her father, the executor, actually paid as proceeds of the sale, $6,644.50. A portion of this went to pay legacies, &c., provided for in the will, and only $4,468.38 remained for distribution. As the sale is repudiated, the defendant should receive out of the proceeds of a re-sale, first of all, reimbursement of the $6,644.50, with interest from the time of making his account and not merely that residue or balance thereof, which remained before the surrogate for distribution to the children of the testator.

I am aware, that no such objection to the decree was raised on this appeal; the amount involved in this correction is not large. No doubt, the far greater importance of the main question has caused that error to be overlooked. But the defendant is an infant, and ought not to be permitted to suffer in a court of equity by any purely technical omission, when the court clearly see that an error has occurred to her prejudice.

The judgment should be modified in the two particulars specified, and in other respects it should be affirmed with costs of both parties paid from the proceeds of sale.

GROVER, J.   By the fifth clause of the will, the testator gave to his executors power in trust to sell, at public or private sale, that portion of his real estate purchased by him of Captain Williams, and made the execution of such power obligatory upon the executors. This did not invest the executors with the title to the land, but the same, upon the death of the testator, descended to his heirs, subject to the

execution of the power. The purchase, at the sale, of the lands at auction, although nominally made by a third person, was really for the sole acting executor, by whose directions the lands were sold. That this sale and the conveyances, the one a deed by the executor to the person who made the purchase as agent for him, and the other by such person to the executor, were voidable at the election of the beneficiaries under the power, is too well settled to require a citation of authorities, and is conceded by the counsel for the appellant. But it is claimed by the counsel for the respondent, that these proceedings were a mere nullity, and entirely inoperative upon the title to the land, and that, notwithstanding these proceedings, the title still remained in the heirs, subject to the execution of the power. No authority is cited by the counsel sustaining this position, or any reason assigned, why a purchase made by a trustee, invested with the legal title, at a sale made by him pursuant to the trust, should have any greater effect than a like purchase by one having a power in trust merely, at a sale made by virtue of such power in trust. I can see no good reason for any such distinction. The same reasons for holding the purchases void or voidable at the election of those who may be injured by such purchases, are equally applicable to both, and to both, therefore, should the same rule be applied. The mere circumstance, that, in the one case, the legal title is in the trustee, and in the other, that title is in some one else, subject to the execution of the power, does not at all affect the principle or justify any distinction in the effect of the purchase. In the former case, the purchase is not held void, but voidable only at the election of the *cestui que trusts*. (Washburn on Real Property, 1st vol., 528–9 ; 1 Story's Eq. Jur., 321, 322, and cases cited ; *Van Epps* v. *Van Epps*, 9 Paige, 238.) The purchase being only voidable at the election of the *cestui que trusts* or the beneficiaries under the power of sale, it follows that until thus avoided, it is valid, and a defeasible title acquired by the purchaser under the sale. This being so, it would also follow that those having the discretionary right to avoid the sale may elect to ratify it, and

when ratified by all having any interest, it becomes valid to all intents and purposes. It is not material in the present case to determine, whether acquiescence in the sale, with full knowledge of all the facts, by those having a right to avoid it, for a less period than would be necessary to bar an action to set it aside, would conclude such parties, as that is not the ground principally relied upon in the present case. That ground is the receipt of their respective portions of the purchase money by several of the plaintiffs acting in their own right with full knowledge of the facts. It can hardly be doubted that this, unexplained, would show an election to abide by the sale, after which the parties so receiving their shares could no longer be heard in opposition to it. This is not upon the principle of equitable estoppels, but upon that which holds that, where a party has two inconsistent rights in relation to the same thing, his election to avail himself of one precludes him from thereafter resorting to the other. In the present case, the beneficiaries under the power had the right severally to acquiesce in the sale, receive their portions of the purchase money, or avoid the sale and have the lands resold under the power, but they could not do both; receiving their shares of the purchase money was an election to abide by the sale. After doing this, they could maintain no action to set it aside. It matters not that they received it from the hand of the surrogate. They knew when they so received it, that it was the purchase money of the land sold and purchased by the executor, and that all that they received from the surrogate consisted of this purchase money. Nor was the clause which, at their suggestion, was inserted in the receipt for the money given to the surrogate to the effect, that the receipt of the money should not prejudice their right to set aside the sale, of any avail to the plaintiffs. Holding that this relieved them from the disability incurred by the receipt of the money would be in effect to hold, that they could, at the same time, receive the purchase money as upon a valid sale, and also proceed to set aside the sale as invalid. This would be manifestly absurd. In these conclusions, both the special and

general terms concurred and held, that if all those having an interest under the power had been capable of binding themselves, and had received their portions of the purchase money, the action to set aside the sale could not be maintained. But they further held, that inasmuch as one of the persons entitled was a *femme covert*, and received her share without the knowledge or authority of her husband, her election was not concluded thereby; and that, as another so entitled, was an idiot, incapable of binding herself by an election, that she was not included; and having since died, her heirs were at liberty, to the extent of her interest, to set aside the sale; and that, as the power required the entire land, and not undivided shares to be sold, the whole land must be sold under the power, and that as a consequence, those plaintiffs who had precluded themselves from setting aside the sale were relieved therefrom, and entitled to the same share of the proceeds of a sale thereafter to be made, and of the intermediate profits of the land, subject to a deduction of the sums received, as though they had never bound themselves by an election to abide by the sale. The money was received by Mrs. Boerum, the *femme covert*, in 1846. As the law then stood, her husband was entitled to the money, and his wife without authority from him had no right to receive it. Her receipt thereof, being without his knowledge or authority, could therefore have no effect upon the right of her husband to proceed to set aside the sale, if he chose so to do. It is true, that the right to receive this portion under the power would survive to the wife, in case she outlived her husband; but this gives no additional effect to her receipt of the money during his life. I therefore concur in the conclusion, that Mrs. Boerum had the right to set aside the sale, and have the premises resold. The finding that Gertrude Schenck was so far idiotic, as to be incapable of binding herself, is sustained by the evidence. The interposition of the Special Term in ordering her portion to be paid to her lawyer was a mere nullity, the court having no jurisdiction to make such an order; the receipt of the money by the lawyer in pur-

suance of the order, had no effect upon her right to set aside the sale. This right continued in her, unimpaired, to the time of her death, and then descended to her heirs, who are the other beneficiaries under the power. But how can the right of Mrs. Boerum and the heirs of Gertrude to set aside the sale, enure so as to enable the three beneficiaries, who, by taking their portions of the purchase money, had precluded themselves from so doing, to derive any benefit therefrom? It is said, in the opinion of the able judge at Special Term, that the proper execution of the power requires the entire land to be sold, and that Mrs. Boerum and those who have succeeded to the rights of Gertrude have the right to insist upon such a sale. Conceding this to be so, how does it follow that those beneficiaries, who are concluded by the former sale, are to share in the proceeds of the re-sale? It is said that they have done nothing equivalent to a conveyance of their title to the land as heirs of the testator. This is true, but no conveyance from them is necessary to pass such title to a purchaser under the power, in case of a valid sale in pursuance of it. But a sale has been made under the power which these beneficiaries have made valid as to them. We have seen that the title acquired by the executor by his purchase was defeasible only at the option of the beneficiaries. Their interests were several. Each was at liberty to act for himself; and when any one had by his act made the sale valid as to him, the title of the purchaser, to the extent of his interest, became perfect. Although the equitable rights of others may require a re-sale of the entire land, the purchaser is entitled to the shares of the proceeds that would have belonged to those, who have made the sale valid as to them, in case they had not done so. Applying this principle to the case, it appears, that there were six heirs, who were the beneficiaries under the power. One of these was the executor and purchaser. Three of the others, Lane and wife, Brouwer and wife, and Stephen Schenck confirmed the sale by receiving their portions of the purchase money. The appellant is, therefore, entitled to the portions originally given to them by

the will. By the death of Gertrude Schenck, each of the surviving five acquired her interest, share and share alike. This was one-sixth of the entire proceeds to be divided between the five. By the subsequent death of Stephen, his right in the share given to Gertrude descended to the remaining four, thus making the respective interests in this share one-fourth of one-fifth, or one-twentieth of the entire proceeds. The judgment should be so modified as to declare such to be the rights of Lane and wife, and Brouwer and wife, subject to the deductions prescribed in the judgment. Had the plaintiffs appealed from the judgment, I should have found some difficulty in holding that the sum paid to the lawyer of Gertrude was to be deducted. But they have not appealed, and this question does not, therefore, arise. In all other respects, the judgment is conformable to the rights of the parties, and, modified as above, should be affirmed. The costs of all the parties to this appeal should be paid from the proceeds of the re-sale.

HUNT, Ch. J., MASON, JAMES and MURRAY, JJ., concurred in the result of WOODRUFF's opinion. DANIELS, J., was for the further modification proposed in GROVER's opinion. LOTT, J., did not vote.

Judgment affirmed with the modifications suggested in the opinion of WOODRUFF, J.

NOTE.—As to acquiescence by the *cestuis que trust* in a breach of trust, and how far such acquiescence estops them from disaffirming the trustee's act, see *Johnson* v. *Bennett* (39 Barb., 237); *Clark* v. *Law* (22 How., 426); *Mitchell* v. *Berry* (1 Metc. Ky., 602); *Mulford* v. *Munch* (3 Stock. N. J., 16); *Mason* v. *Martin* (4 Md., 124); *West* v. *Stearn* (3 Jones' Eq. N. C., 102); *McNish* v. *Pope* (8 Rich. Eq. S. C., 112); *Buell* v. *Buckingham* (16 Iowa, 284); *Rice* v. *Clegham* (21 Ind., 80); *Rickets* v. *Montgomery* (15 Md., 46); *Fears* v. *Lynch* (28 Geo., 249); *Jones* v. *Smith* (33 Miss., 215); *Huff* v. *Earl* (3 Ind., 306); *Follansbee* v. *Kildreth* (17 Ill., 522); *Pitt* v. *Putney* (12 Ired., 69).

The rule in England seems to have been rather more strict against the trustee. (*Bateman* v. *Davis*, 3 Madd. R., 98; *Thayer* v. *Gould*, 1 Atk., 615; *Brice* v. *Stokes*, 11 Ves., 319; *Jones* v. *Higgins*, Law Rep. 2 Eq., 538; *Watson* v. *How*, 15 Madd. R., 55; *Lister* v. *Lister*, 6 Ves., 631; *Ex parte* James, 8 Ves., 351; *Webb* v. *Rorke*, 2 Sch. & Lef., 572; *Whichcote* v. *Lawrence*, 3 Ves., 740; Anon., 2 Russ., 350; *Oliver* v. *Court*, 8 Price, 167, 168;

*Baker* v. *Read*, 18 Beavan, 398; *Randall* v. *Errington*, 10 Ves., 427, per Sir Wm. Grant; *Roche* v. *O'Brien*, 1 B. & B., 353, per Ld. Manners; *Parks* v. *White*, 11 Ves., 226, 12 Ves., 378; Lewin on Trusts, 472.)

In the present case, in settling the decree, the contingency of the price on a re-sale being *less* than that bid by the trustee on·the former sale, does not seem to have been contemplated; and it is probable, all parties certainly anticipated an increased price. Still, it has been a matter somewhat discussed in other cases, in setting aside such sales, how to arrange properly the equities of the parties on the re-sale. The plan pretty generally adopted in England, seems to be, that the property should be put up at the price at which the trustee purchased, and if any advance is made over that price, the re-sale should take effect; but if no bidding, the trustee should be held to his original bargain. (See *Lister* v. *Lister*, *supra; Ex parte* James, *supra; Ex parte* Hughes, 6 Ves., 617; *Ex parte* Lacey, id., 625, *Ex parte* Bennett, 10 Ves., 381; *Robinson* v. *Ridley*, 6 Mad., 2.) This rule was applied, also, in this State, with great severity, in the ·leading case of *Davoue* v. *Fanning* (2 Johns. Ch. 271).—REP.