BETSEY POST, RESPONDENT, *v.* LEONIDAS B. BENCHLEY AND OTHERS, APPELLANTS.

*Devise to a wife, while unmarried, of a right to use and occupy a house — a sale made by an executor with her consent vests a good title in the purchaser — she has the same interest in the proceeds as in the land — the executor cannot contract with the widow for a release of her interest in the fund — the statute of limitations does not run against a claim made by her to recover the net income of the fund.*

Upon an appeal from an interlocutory judgment requiring one Benchley, the surviving executor of the will of Dan. Post, deceased, to render an account to the plaintiff concerning the interest and income of a fund in his hands, arising from the sale, under a power of sale conferred by the will, of a house and lot belonging to the testator, it appeared that the testator devised to the plaintiff, his

wife, the use of and the right to occupy the said house and lot so long as she remained his widow, and directed his executors to distribute in equal shares all the remainder of his estate, both real and personal, between his wife and his children.

On January 20, 1865, the plaintiff, who has never remarried, joined with the surviving executor, in conveying the property for the sum of $1,800, which was paid to the executor, the deed reciting a consideration received by her of one dollar. On the same day the executor, in his representative capacity, executed and delivered to the plaintiff a bond reciting the said sale and conveyance, and that, "as a consideration for such release, it was agreed by and between the said William S. Benchly, as such executor as aforesaid, and the said Betsy Post, that the said executor should annually, after the first* day of March next, during the widowhood of the said Betsy, pay, or cause to be paid, to her the sum of seventy-five dollars," the condition of the bond being that the said executor, *as such*, should pay to the plaintiff the said sum, annually, as long as she remained the widow of the testator. Such payments were made by the executor up to May 29, 1886, when this action was commenced to compel him to account and pay to the plaintiff so much of the net income derived from the said sum as remained in his hands after crediting him with the payments already made.

*Held*, that as the widow consented to the sale and executed the release the purchaser acquired a perfect title.

That the fund derived from the sale of the house and lot rightfully came into the hands of the surviving executor, in his representative capacity, to be used and finally distributed as directed by the testator in his will.

That, by converting the land into money under the power of sale, the widow and the devisees of the remainder took the same interest in the proceeds as they had in the land.

That, in determining the right of the parties to this action, the agreement made by the executor should be entirely ignored, because it was not binding upon the obligor personally, or as executor, and because the fiduciary character in which he held the fund prevented him from entering into contracts with the widow. (HAIGHT, J., dissenting.)

That the statute of limitations constitutes no defense as to such sums as might be found to have been detained by the executor for the period of more than six years prior to the commencement of this action, as his fiduciary capacity was expressly imposed upon him by the terms of the will, and he was bound to take care of the interest of his *cestui que trust*, so long as the relation existed, and could do nothing adverse to it. (BARKER, J.)

The questions as to whether the executor could exercise the power of sale as to the house and lot devised to the widow while she remained unmarried, without her consent, and as to the manner in which the interest should be computed on the fund in the hands of the executor, considered but not decided.

APPEAL from an interlocutory judgment entered in Monroe county upon the report of a referee.

The original defendant was William S. Benchley, executor of the

last will and testament of Dan. Post, deceased. The action was for an accounting concerning the interest and income of a fund in the hands of the said executor, of which the plaintiff claimed to be entitled under the provisions of the will of her late husband the said Dan. Post. It was determined by the judgment that the plaintiff is entitled to all the interest and income on the principal sum of $1,800 which came into the hands of the executor on the 20th day of January, 1865. The accounting was directed to be taken before the referee who tried the issue.

*George W. Smith,* for the appellants.

*W. H. Shuart,* for the respondent.

BARKER, P. J.

By the last will and testament of Dan. Post, which was admitted to probate in April, 1853, he devised to the plaintiff, his wife, the use of and the right to occupy the·house and lot described in the complaint, situated in the village of Newport, so long as she remained his widow. She has never remarried. After making several other devises and bequests to the said plaintiff and his children, he, by the tenth clause of his will, directed his executors to distribute in equal shares all the remainder of his estate, both real and personal, between his wife, the plaintiff, and his children, all of whom are mentioned therein by their respective names. The provisions of the will in favor of his wife were declared to be in lieu of her right of dower in his real estate. William P. Benchley and Henry D. Safford were named as executors of the will, and they were given "full power and authority to sell the real estate and to give and execute full and ample deeds of warranty therefor." Prior to the 20th of January, 1865, Safford died, and on that day the surviving executor, Mr. Benchley, sold and conveyed the house and lot for the sum of $1,800, which was paid to him and the plaintiff joined in the deed, and, for the consideration of one dollar, as therein expressed, released all her interest in the premises, but she never received any part of the $1,800 paid to the executor. On the same day the executor, in his representative capacity, executed and delivered to the plaintiff a bond in which the fact of said sale and conveyance and the terms thereof were recited and the one relating to the release

by the plaintiff is as follows, viz.: " As a consideration for such release, it was agreed by and between the said William S. Benchley, as such executor as aforesaid, and the said Betsy Post, that the said executor should annually after the first day of March next during the widowhood of the said Betsey, pay or cause to be paid to her the sum of seventy five dollars." The penalty of the bond was fixed at $1,072, the condition being that the said executor, *as such*, should pay to the plaintiff the sum of seventy-five dollars annually so long as she remained the widow of the testator. · The executor made such payment up to the time of the commencement of this action, which was on the 29th day of May, 1886. No distribution has ever been made of the said principal sum nor does it appear how the executor has kept and invested the same, or the amount which he has realized as interest thereon.

The plaintiff's claim is that she is entitled to the net income derived from the said principal sum, and she brings this action to compel an accounting and the payment over to her of so much thereof as yet remains in the hands of the executor after crediting him with the payments already made. The defendant assumes the position that the said bond is in the nature of an agreement between the plaintiff and the executor, and, as such, is binding on her, and that its legal effect is, to exempt the executor from all liability to account to the plaintiff concerning the income derived from the said funds.

There is nothing in the case showing that the plaintiff and the devisees, who were entitled to the fund on the termination of the plaintiff's widowhood, ever entered into any arrangement or agreement by which she agreed to accept the annual payment of seventy-five dollars in lieu of her interest in the house and lot or of the avails derived from its sale. It is not pretended that the plaintiff has, in any manner, given up or surrendered her right to the use and income derived by the executor from said principal sum, except so far us she may have done so by joining in the said deed and accepting the said bond with the legal obligations which it imposed upon her. The executors, before making the said sale, rendered an account before the proper surrogate of all their other transactions and paid over all moneys remaining in their hands to the devisees and legatees as required by the will.

The fund derived from the sale of the house and lot rightfully

came into the hands of the surviving executor, in his representative capacity, to be used and finally distributed as directed by the testator in his will. By the terms of the will the devisees mentioned in the tenth clause became vested with the title to the premises in question, liable, however, to be divested by a sale of the same by the executors, who were given the power to sell the premises for the purpose of making a distribution of the proceeds to and among the devisees. This power of sale was absolute and unqualified without any specific directions when the house and lot should be sold. An authority given by will to an executor to sell lands, unless accompanied with the right to receive the rents and profits, vests no estate in the executor, but the lands descend to the heirs or pass to the devisees of the testator, subject to the execution of the power. (1 R. S., 729, §§ 56, 59; *Crittenden* v. *Fairchild*, 41 N. Y., 289; *Morse* v. *Morse*, 85 id., 53.)

In this case it is clear that the power of sale bestowed upon the executors, was for the purpose of making a distribution of the proceeds, when the time should arrive for it to be made, for by the tenth clause of the will, they are directed to make distribution of the remainder of the testator's estate, and the house and lot would have constituted a part of such remainder, had it not been sold before the termination of the widowhood of Mrs. Post. The widow consented to the sale, and by the release which she executed, the purchaser acquired a perfect title to the premises. As between her and the purchaser, it was not in any proper sense a sale, for a consideration paid to her, of her interest in the house and lot. All the consideration was paid to the executor, and as the executor making the sale, was discharging a duty imposed upon him by the will, it is to be presumed that it was beneficial to all interested parties, and that the price paid was satisfactory to all concerned. By converting the land into money under the power of sale, the widow and the devisees of the remainder took the same interest in the proceeds as they had in the land. (*Ackerman* v. *Gorton*, 67 N. Y., 63–66,) No claim is made by the defendants, that by the conversion of the land into money, the estate of the devisees was enlarged, or that they could enforce a distribution of the proceeds at once, and thus deprive the widow of the use and the net income of the entire proceeds. As the case is now presented, we are not

called upon to determine whether by the terms of the will the widow had the absolute right at her election to occupy the premises until terminated by her death or remarriage. She is given the use as well as the right to occupy the house and lot, and in equity the fund stands in the place of the land, and she is entitled to its use.

As the time of distribution had not arrived when the sale took place the executor, as trustee, was charged with the duty of preserving and investing the fund, and paying over the proceeds to the plaintiff. The plaintiff was one of the beneficiaries, and (1st), she was entitled to the entire net income; and (2d), as one of the devisees of the remainder, she was to share in the distribution of the principal fund if she should at any time remarry. The executor, as such, had no power or authority to contract with the plaintiff binding her to receive less than the net proceeds. The income during her widowhood was her individual estate The contract which he made was not binding on the devisees, and if the income derived from the fund, should, from any cause, be less than the sum of seventy-five dollars per annum, he could not make up the deficiency from the principal sum. He is not bound himself, personally, to pay to the plaintiff the stipulated sum mentioned in the bond. So that instrument, regarding it as containing a promise on the part of the plaintiff to accept seventy-five dollars annually in satisfaction of the net income, and as a release of all the balance, was not available to her as a security that she should, during her widowhood, receive that sum as an annual income under all circumstances. To the plaintiff the undertaking was utterly worthless, as she could not enforce the promise in either a court of law or equity. For these reasons, in determining the rights of the parties in this action, I think the bond should be entirely ignored, because it is not binding upon the obligor personally, or as the executor of the will. If the plaintiff and the devisees of the remainder had, at the time of the sale or since, as between themselves entered into an agreement to extinguish her interest in the fund by paying to her a gross sum or a fixed sum to be paid annually, and she had executed a release of her rights, under such an arrangement it would have been valid and binding. But no such position is taken by the defendant, nor has the referee found any fact which supports that view of the case.

We may now examine the defense upon the supposition that the

bond is binding upon the defendant individually. The defendant, in his answer, alleges that the plaintiff intended to release all her interest in the premises and in the purchase-price and received therefor and consented to accept the bond in payment and satisfaction of all her claim upon the fund or income thereof. In support of this part of the answer the defendant relies entirely on the bond and the recitals which it contains. No other item of evidence, as to the intention, is found in the case, nor has the referee found that there was any such agreement or arrangement upon the subject. I submit the recitals do not establish the fact that the plaintiff agreed to accept seventy-five dollars per annum in lieu of and as a full satisfaction of her right to the net annual income derived from the fund. It is only an admission that the executor has agreed to pay her seventy-five dollars per annum in consideration of such lease. It is to be presumed that the money, if properly invested, would produce a sum equal to the legal rate of interest, and the annual income would be a sum equal to that amount less the expenses of investment and taxes. The recital does not state that the plaintiff had released the executor from the performance of any of his duties which he owed her as a beneficiary of the fund.

A trustee or a donee of a power in trust cannot trade and bargain with a beneficiary with a view of deriving any advantage to himself by the transaction. The rule is inflexible and applying it to this case, the executor, by his fiduciary character, was incapacitated to purchase, and neither upright intention on his part nor the payment of a fair price will overcome the legal impediment, and a court of equity will set aside the transaction on the application of the beneficiary, without requiring him to establish that the trustee acted fraudulently or profited by the bargain. (*Boerum* v. *Schenck*, 41 N. Y., 182; Hill on Trusts, 434; *Cowee* v. *Cornell*, 75 N. Y., 100.)

The doctrine of acquiescence, which in some cases may defeat the demand of the beneficiary for relief, has no application in view of the facts of the case. It does not appear that the executor has used a dollar of his own money in making the payments heretofore made, for the legal presumption is that the sum derived from the use of the fund exceeded the sums which he has paid over to the plaintiff. He has simply taken the plaintiff's money to discharge

his own promise, and such was the substance of the arrangement he made with the plaintiff.

The interlocutory judgment requires an accounting concerning the interest and income of the fund from the day the sale took place. The referee has not determined whether the accounts shall contain annual rests or not, and whether interest upon interest should be allowed the plaintiff if it should appear that the net income was greater than the sum paid over to her. In determining that question the facts and circumstances which will appear upon the accounting must be taken into consideration. It is not proper that we should make any intimation upon that subject, as it is one of the questions referred to the referee upon which he has not yet acted.

The statute of limitations constitutes no defense as to such sums as may be found to have been detained by the executor for the period of more than six years prior to the commencement of this action, as his fiduciary capacity was expressly imposed upon him by the terms of the will, and he was bound to take care of the interests of his *cestui que trust* so long as the relation existed, and he could do nothing adverse to it. The rule that when one receives money in his own right, and he is afterwards by evidence or construction changed into a trustee, he may insist on the lapse of time as a bar has no application to this case. (*Lammer* v. *Stoddard*, 103 N. Y., 672; *Price* v. *Mulford*, 12 N. Y. St. Rep. 18 [Ct. of Ap.]; Perry on Trusts, § 863; *Decouche* v. *Savetier*, 3 Johns. Ch., 190; *Kane* v. *Bloodgood*, 7 id., 89.)

The judgment should be affirmed, with costs.

BRADLEY, J.:

The will of Dan. Post gave to the plaintiff "the use of *and the right to occupy* the house and lot and the out-buildings thereon," so long as she should remain his widow.

I am unable to adopt the conclusion of the referee that this devise to the plaintiff was subject to the power of sale given to the executor by the will. The intention of the testator evidently was to give to her the right of occupancy of the premises during the time designated, and the power to the executor was not such as to permit, without her consent, the conveyance of the estate devised to her

and the substitution for it of the income of the proceeds of sale. In view of the provisions of the will, the only essential purpose of the power of sale was for the division of the residuum of the estate amongst the residuary legatees and devisees, which, as related to these premises, was subject to this devise to the plaintiff.

The cited case of *Crittenden* v. *Fairchild* (41 N. Y., 289) does not seem to support the view of the referee in that respect. There the will gave and devised the remainder of the estate, real and personal, of the testator to several persons, to be divided between them, and gave to the executor full power and authority to sell his real estate, or any part thereof, and to execute deeds of conveyance. It was held that the devise to the residuary devisees was not inconsistent with the power of sale, but was subject to it, because it was apparent that the power was intended and necessary to enable the executors to make the division and distribution amongst such devisees and legatees, and for that purpose the executors took a power in trust. In the case at bar there is no occasion to divest the right of occupancy given to the plaintiff, as the residuary legatees and devisees take subject to such devise to her, and it is only for the purposes of the division between them that the power of sale apparently was intended to be exercised, and for that purpose only, it may be treated as a power in trust, as it does not appear that its exercise was necessary to pay debts, and the provisions of the will do not permit it for the payment of the specific legacies, because they are not charged upon the real estate, and there is no equitable conversion of the real into personal estate by the will. As the plaintiff joined with the executor in the conveyance, the view relating to the character of the power of sale and its exercise has no importance upon the question presented here, except in its bearing upon the relation existing between the executor and the plaintiff prior to and at the time of the sale and conveyance of the house and lot, as relates to the estate in it devised to her. There was then no relation of trustee and *cestui que trust* between them in that respect. The plaintiff was *sui juris* when she made the arrangement with the executor to join in the conveyance and to take an annuity of seventy-five dollars secured by his bond. The premises were sold for $1,800, he received the money, has paid the plaintiff seventy-five dollars annually pursuant to the agreement between them, and the residuary

legatees and devisees are not entitled to the corpus of the fund, which is substituted for the premises, until the termination of the estate in it devised to the plaintiff, and then they will be entitled to only the principal sum of the fund. In the meantime the executor holds it as trustee for the benefit of all concerned.

This action is brought to require him to account to the plaintiff and pay to her the amount of the income of the proceeds of the sale in excess of the annuity so paid to her. The referee has found that the arrangement with the executor to pay the plaintiff such sum annually was without consideration; that it was the duty of the executor at once after the sale to invest its proceeds and pay the interest from the investment to the plaintiff; and that the burden of proof is on the defendants to show that the bargain made by their testator with the plaintiff was entirely fair, to relieve it from suspicion that it was otherwise, and directs an accounting for which an interlocutory judgment was entered. My view is not in support of the conclusion of the referee that there is any presumption that the transaction of the agreement between the executor and the plaintiff was unfairly had, conducted and consumated on the part of the executor, or that the duty was imposed upon him to at once invest for her benefit the fund produced by the sale. At the time of making the agreement there apparently was not, nor does it appear that there was in fact any relation between those parties which, in any recognized legal sense, put the plaintiff into a position of disadvantage. And therefore the burden is not upon the defendants to relieve the transaction from suspicion of unfairness on the part of their testator. But he received and held the proceeds of the sale as trustee, and he had no right to speculate out of his relation and realize or appropriate to his own use or profit from it. The plaintiff notwithstanding her agreement was entitled to the whole income of the fund, less his reasonable expenses and commissions, and for that he may have been and his representatives may be required to account to her.

The inquiry arises as to the principles that should govern in respect to the accounting to be had. Ordinarily a trustee taking a fund not subject to call is required to use diligence in making it productive by safe investment at interest, and failing to do so will presumptively be chargeable with interest upon it. (*Jacot* v. *Emmett*,

11 Paige, 142; *De Peyster* v. *Clarkson*, 2 Wend., 77; 1 Perry on Trusts, § 462.) But this case is not within that rule by reason of the agreement before mentioned, by which the plaintiff agreed to take the sum of seventy-five dollars annually. And thus the executor was put at rest upon that as the extent of his liability. The plaintiff has for upwards of twenty years received from him that annuity without, so far as appears, raising any question as to its sufficiency to discharge his liability for income of the fund. This acquiescence may have resulted from her understanding that her rights were governed by the terms of the arrangement represented by his bond. And I think that such is its effect, unless it is made to appear that he did in some manner make an investment of the fund which produced an income beyond the amount so provided for and paid, and that such claim is not established by presumption.

These views lead to the conclusion that by force of such agreement between the plaintiff and the executor, the principle which is ordinarily applied to charge a trustee or guardian who receives a fund to take care of for his *cestui que trust* or ward is rendered inapplicable to the situation in this case, in so far that there was no neglect of legal duty on his part to the plaintiff which charged him, in his omission to invest the money and derive an income from it, if he failed to do so. The question is one of the amount of income produced and not of failure or neglect to invest, or what might or ought to have been derived from it by investment. While some of the conclusions of the referee are not in accordance with these views, the adjudication expressed in the judgment is not in any respect inconsistent with them. It simply determines that the plaintiff is entitled to an accounting and directs the defendants to furnish a copy of their account. And although the evidence does not show that the plaintiff will be entitled to recover anything upon the accounting it seems unnecessary to direct a new trial or to modify the judgment. The whole question can arise upon the hearing before the referee. And the question of costs can be disposed of on the entry of final judgment.

The judgment should be affirmed, costs of this appeal to abide the final award of costs.

HAIGHT, J. (dissenting):

This action was brought for an accounting by a trustee. On or

about the 13th day of January, 1853, Dan. Post of the county of Herkimer died, leaving him surviving the plaintiff his widow. He left a last will and testament which was admitted to probate, and William S. Benchley and Henry D. Safford, the executors therein named, qualified and entered upon their duties as such. Under the will the plaintiff was given the use during her widowhood of the real estate therein mentioned, and subsequently and on the 20th day of January, 1865, William S. Benchley, the then sole surviving executor, under a power of sale given in the will, sold and conveyed the real estate of which the plaintiff was given the use, to one Sarah Keith for the sum of $1,800, the plaintiff joining with him in the conveyance. On the same day the executor executed and delivered to the plaintiff a bond of which the following is a copy:

" *Whereas,* Betsey Post of Rochester, in the county of Monroe, State of New York, widow of Dan. Post, late of Newport, in the county and State aforesaid, is, under the last will and testament of her said husband, entitled to the use and occupation during her widowhood, of the house and lot situated in the village of Newport, wherein the said Dan. Post lived at the time of his decease.

" And, *whereas,* William S. Benchley, surviving executor of the last will and testament aforesaid, by virtue of the power therein to him given to sell the real estate of the testator and to convey the same, has this day sold and conveyed the said house and lot by deed to Sarah Keith, and in which said deed the said Betsey Post has joined and has forever released and quit-claimed unto the said Sarah Keith all her right, title and claim to the premises conveyed.

" And, *whereas,* as a consideration for such release, it was agreed by and between the said William S. Benchley, as such executor as aforesaid, and the said Betsey Post, that the said executor should annually, after the first day of March next, during the widowhood of the said Betsey, pay, or cause to be paid, to her the sum of seventy-five dollars.

" Now, therefore, know all men by these presents, that I, William S. Benchley, surviving executor of the last will and testament of Dan. Post, late of Newport, deceased, as such, am held and bound unto Betsey Post, of Rochester, Monroe county, N. Y., in the sum of one thousand and seventy-two dollars, or to her certain attorney, executors, administrators or assigns, for which payment, well and

truly to be made, I bind myself as such executor as aforesaid, sealed with my seal and dated this 20th day of January, A. D. 1865.

" The condition of this obligation is such that if the above bounden obligor shall and does well and truly pay, or cause to be paid, to the above obligee or her certain attorney, executors, administrators or assigns, so long as she shall be and remain the widow of Dan. Post aforesaid, the sum of seventy-five dollars on the first day of March in each and every year after the first day of March next, then this obligation to be void, otherwise of force.

" (Signed) WILLIAM S. BENCHLEY. [L. S.]
" *Surviving Executor, etc.*

" BETSEY POST."

Pursuant to the provisions of this bond, Benchley has annually paid to the plaintiff the seventy-five dollars therein mentioned. After the commencement of this action Benchley died. The defendant requested the referee to find that the plaintiff accepted the annuity of seventy-five dollars paid annually in lieu of the use and occupation of the premises given to her under the will. This the referee refused to find, and instead thereof found that, as between the plaintiff and the defendant's testator, the bargain on her part to take seventy-five dollars for her interest in the real estate and the fund arising from the sale thereof was without consideration. This finding was excepted to.

The evidence in the case, aside from that established by the records, was stipulated by the parties. We have no fault to find with the views of the referee to the effect that a power in trust given to executors to sell real estate devised by will is valid, and that such power is not inconsistent with the devise, but the estate vests in the devisee subject to the execution of the power, and that in case of sale under the power the devisee and remaindermen take the same interest in the proceeds that they had in the land, and that, in the case under consideration, the plaintiff, after the sale, was entitled to the use of the income derived from the $1,800 received by the executor on the sale of the land. But, at the time of making the sale, she took from Benchley, the executor, the bond in question, which was also signed by her, in which it is stated that as a consideration for such release it was agreed by and between

Benchley, as executor, and herself, that he should annually, after the first day of March next, pay to her the sum of seventy-five dollars during her widowhood. It would thus appear that she executed the deed, releasing her interest in the real estate, in consideration of the annual payment of the sum named, and that the executor obligated himself to pay that sum annually during her widowhood. It appears to me that there was a consideration ample to sustain this contract. It is true that at that time the rate of interest prescribed by statute upon the $1,800 would exceed seventy-five dollars called for by the bond, but the fees and expenses of the trustee in keeping the same properly invested, together with taxes, etc., should be considered together with the further fact that the condition of the money market may so change as to make it difficult or impossible to collect that rate of interest. The bond requires seventy-five dollars to be paid annually without regard to the rate of interest that could be obtained upon the money. It is a well known fact that for some years it has not been easy to safely invest money and procure the rate of interest allowed by law; that money in large quantities has been loaned at four and even three and one-half per cent interest, and it may, in the future, be difficult to get even that amount, so that the use of the money in question would not amount to the sum called for by the bond. It consequently appears to me that there is a consideration in the bond itself, by which the executor agrees to pay her that sum even though the interest should not amount to one-half thereof.

Again, it is a conceded fact that for twenty years she has annually accepted the seventy-five dollars paid her by the executor, and no question appears to have been made until this action was brought. It was paid to her, under the express provision of the bond, as a consideration for her release of her life estate in the realty, the legal effect of which is that it was in lieu of the use and occupation of the premises given her under the will.

Again, there is no claim or allegations of fraud. There has been no tender or offer to surrender the bond in question. The judgment entered does not attempt to nullify or cancel it; it, therefore, remains a valid instrument and binding upon the defendants in this action. They may, in the future, be compelled to pay the annuity therein provided, even though the interest upon the money falls

short of that amount, so that, under the judgment entered, they are required to account for the interest received as the personal representatives of the trustee in the past, and in the future they may be required to pay the annuity provided for in the bond.

We are aware that trustees will not be permitted to deal with the estate for their own benefit, or to sell or transfer to themselves the trust property ; that the courts will scrutinize with care the dealings between the trustee and the *cestui que trust,* but there is nothing in the transaction disclosed in this case that appears to us suspicious, unfair or unreasonable.   The real estate in question consisted of a house and lot located in a country village, and it is not surprising that the plaintiff found that the annuity was more valuable than the use, after deducting taxes, repairs, etc., and that she was willing to join in a sale provided she could be guaranteed the seventy-five dollars per year.   For twenty years and upwards she has acquiesced in this contract, has received her money, and, in the absence of fraud, it does not appear to us just or equitable that she should now be permitted to recede from it.

DWIGHT, J., not sitting.

Judgment affirmed, costs to abide final award of costs.