Magomber, J.
The plaintiff on the 21st day of April, 1870, owned 200 shares of the capital stock of the Central Pacific Railroad Company of California, and on that day the defendants jointly purchased these shares of him.
The agreement, as set forth in the complaint, is as follows: The defendants were to pay for the stock its par value and interest from September 1, 1864, and if they or either of them should pay to anybody else any higher price for any shares of the stock of the company than the price so paid to the plaintiff, in such event the defendants' were to pay to the plaintiff on demand, in addition to par and interest already paid, the difference between that sum and the highest price paid to any one else; and further, in case during or after the then contemplated visit to California of one William H. Aspinwall (who also had 500 shares, which were sold at the same time and on the same terms), the plaintiff should become or be dissatisfied with the sale of the stock, the defendan s were, upon demand and upon the repayment of the purchase price, to return,to the plaintiff his shares.
The complaint further alleges that while Mr. Aspinwall was in California the plaintiff became dissatisfied with the sale and demanded that the defendants should return to him the stock and that the contract be rescinded, and offered to return the purchase price.
The answer of the defendant, Huntington, further than that it put the plaintiff to proof of his allegations, is unimportant, for upon the trial no evidence was given in his behalf. The defendant’s counsel rested upon the defects and deficiencies of the plaintiff’s case alone.
The evidence being undisputed, the contract established thereby was a matter of judicial construction. As stated by the learned judge in his charge to the jury it was not materially different from that which was alleged in the complaint, except, as the judge has it, the contract was to be rescinded at the plaintiff’s election if Mr. Aspinwall should express his dissent after his visit to California. The evidence established the fact also that after the visit of Mr. Aspinwall to California the plaintiff called upon Mr. Huntington for the 200 shares, and demanded that they be returned to him, and that Huntington failed to deliver them to him. The judge’s interpretation of this part of the contract was correct. “ The obligation of the contract was upon demand and offer to pay what he had received for it that he would return the stock. The omission or neglect to return it, or refusal to return it, under the circumstances was a breach of the contract. ”
It further appeared in the case that under circumstances, *762 which will be adverted to hereafter, the defendants did actually receive from other persons than the plaintiff, stock of the same corporation which cost them, with other things, the sum of $400 or $425 per share. It is the difference between the sum so paid by the defendants to the plaintiff and the amount which the same number of shares would come to at the price of $400 or $425 per share that the verdict of the jury is supposed to be based upon.
The complaint had a double aspect, one cause of action being to recover the value of the shares which the plaintiff had sold and delivered to the defendant, and was founded on a claim of a total rescission of the contract, and the other was to recover upon the terms of the contract alone the enhanced price produced by the subsequent alleged purchase by the defendants of other shares at higher rates. The court at the trial compelled the plaintiff to elect between these inconsistent remedies, and the plaintiff elected to abide by the allegation and proofs relating to a recovery for the additional sum under the contract itself, by which the defendants were to pay the plaintiff an additional sum of money measured by their future purchases. By the terms of the contract, as testified to by the plaintiff, the plaintiff, after the sale and delivery of the stosk to the defendants, had a right of selection of two things. He could abide his time, and in the event of payment to others of higher prices, demand of the defendants a sum of money which, with the sum already received, would be equivalent to the prices of the new purchases. No limit of time seems to have been made to this portion of the contract. The other part of the contract, and dominating the rights of the parties while it existed, was the privilege given to the plaintiff within a specified time to rescind the whole transaction, and by returning the purchase price which had been paid to him, receive back the shares of stock which he had parted with.
The parties contemplated an immediate decision of the question, whether the transaction should remain a conditional and provisional sale, as it was in the beginning, or whether it should become absolute and irrevocable, leaving open only the question as to how much money should ultimately be paid by the defendants for the stock.
One of the principal questions in the case is, whether the election which the plaintiff made to rescind the contract altogether was not binding upon him. The learned judge at the trial declined to rule in the affirmative of this proposition, but held that inasmuch as the defendant did not as a matter of fact return the shares of stock, the right of the plaintiff to maintain an action upon the residue of the contract was unimpaired.
*763 It is difficult to find an answer to the proposition contended for by the learned counsel for. the defendants that there was, by the action of the plaintiff, a complete and effective rescission of the contract.
The fact of such rescission is distinctly and positively averred in the fifth paragraph of the complaint. The evidence in the case corroborates that allegation. The case is devoid of any evidence to show any agreement of the parties after the demand by the plaintiff of the return of the certificates and the tender by him of the purchase price by which the rescission was waived or revoked. Whatever the rights of the parties were, they were fixed and determined primarily by the mutual agreement, as testified to by the plaintiff, and secondarily, by the independent action of the plaintiff alone by which, in pursuance of the terms of the original agreement, the contract was rescinded and demand made for the restoration of the respective parties to their former condition.
The error committed by the trial judge was in holding that there was no rescission of the contract, because of the failure of the defendant to comply with the demand for the redelivery of the stock. If this rule could be applied to a case where, by the terms of the agreement, the right to rescind existed on the part of one person, as in this case, it would produce much embarrassment.
The general rule is that the right of election of two remedies when- made is final and conclusive; and that where the contract itself provides for a rescission of a sale of personal property such rescission may be made by the person alone who has the right to make it under the agreement, and, when made, it is irrevocable; and thereafter nothing but a new agreement between the parties can change their respective duties and obligations. The case thus far proceeded at the trial upon the assumption that in no event could the defendant Huntington become possessed of any rights under the contract which were not subordinate to the claim of the plaintiff. The true construction of this agreement is that after the plaintiff had made his election to rescind the contract, to receive back his shares, tendering therefor the original purchase price, the defendant bad a right to assume that the plaintiff thereby abandoned wholly the alternative part of the original agreement relating to future purchases. There is nothing in that portion of the agreement out of which any special equities can be worked in favor of the plaintiff. Persons commonly bargain and pay for stock according to the market price or according to the agreement then presently made. While it is competent to make an agreement to pay an additional sum in a certain event, as was done by these *764 parties, there is nothing in the claim of the plaintiff of a specially equitable nature, because that part of the claim, as developed in this case, is based largely upon a demand in the nature of a penalty.
This conclusion is, however, not reached upon any supposed inequitable claims made in behalf of the plaintiff. On the contrary, it is based solely in respect to this branch of the case upon the proposition that the plaintiff himself made an effective and irrevocable rescission of the whole contract when he demanded back his stock and tendered to the defendant the purchase price thereof.
The remedies of the parties thereafter were fixed and determined by that action of the plaintiff himself.
In the case of Andrews v. The Ætna Life Insurance Co. (92 N. Y., 596), it was held that an election by a principal of an unauthorized act of his agent when once made was irrevocable. In the case of the Second National Bank v. Burt (93 N. Y., 249), it is said: “In the case of adult parties subject to no legal disabilities, the adoption or repudiation of a transaction involving the unauthorized use of their funds, must be promptly made upon discovery of the facts, and when once deliberately made is finally made. The plaintiff in this case had no light to impose upon the defendant the risk attending the final result of the venture and still claim to hold an interest in it.” So also is the case of Kinney v. Kiernan (49 N. Y., 164), which decides that after a contract of sale has been rightfully rescinded by the vendor, the contract is at an end, and no act on the part of the vendor alone can revive it, and that thereafter an action upon the contract is not maintainable. See also Boerum v. Schenck, 41 N. Y., 182. In Junkins v. Simpson (14 Maine, 364), it is held that the contract cannot be repudiated in part and retained in part. In Weeks v. Robie (42 N. H., 316), it is held that a party who is entitled to repudiate a contract and wishes to rescind it, must do so distinctly and unequivocally. He cannot treat the contract as binding and rescind it at the same time. In Voorhees v. Earl (2 Hill, 292), it is held that a sale cannot be rescinded in part. The court says: “When one party is desirous of rescinding a contract by reason of the other’s default, he must do so in toto, and cannot hold on to any part.” In Stevens v. Hgde (32 Barb., 171), it is also held “That an election by the vendor to rescind, when distinctly and definitely made, cancels and puts an end to the contract in toto, and restores the vendor to his original title as general owner of the property, and leaves the parties in their original position in respect to the title.” In the case of Sage v. Hazard (6 Barb., 179), the defendant agreed to charter to the plaintiff a ship, then on her passage from *765 Havre to New York. If the vessel should, not arrive in New York by the 10th of December the plaintiff had the option of continuing the agreement or not. The vessel did not arrive until the 28th of December, and on that day the plaintiff elected to continue the agreement. It was held by the court that the option expired on the 11th day of December, and could not be exercised afterwards. The court there further held that a question of that nature was one of law for the court and not for the consideration of the jury, where the agreement can be fairly construed to settle the time at which the option is to be determined. See also Lawrence v. Ocean Insurance Co. (11 Johnson, 261).
We have not been cited to any cases which controvert this principle.
The only other question upon the merits of the case relates to the alleged purchase by the defendant of stock of other persons at higher prices than the sum paid to the plaintiff. No claim is made that the defendants or any of them had bought stock of other persons at higher prices between the time of the sale by the plaintiff to them and the rescission by him of the contract of sale.
Subsequently to that, it is shown that a suit was brought in the state of California, against the Central Pacific Bail-road Company, and other defendants, by one Lambard and others, in their capacity as stockholders, which was finally settled, before judgment, by agreement, one of the terms of which was, that the plaintiff in that action should turn over the stock which he held to a certain company called the Contract and Finance Company, one of the defendants in that action. The stock was in fact so transferred. Another suit was brought by one Braman and others, against the Central Pacific Bailroad Company, of California, and others, and compromised in a similar way.
Undoubtedly the learned judge was correct in holding that the Contract and Finance Company, was substantially the defendants in this action, in respect to its connection with that litigation, and that consequently any purchases which they made under the name of the Contract Company should be deemed to have been made by themselves.
It was in settling these suits that the defendants, either directly or indirectly, paid sums of money, variously figured from §400 a share to §425 a share.
The nature of the settlements of the California suits which is made the measure of damages in this action, is shown •mainly by the deposition of Mr. Brown and Mr. Leland Stanford. From the evidence it appears that the two suits mentioned, were begun in the year 1870. The actions were based upon an allegation that the individuals instrumental in carrying out the enterprise of which the Central Pacific *766 Railroad Company, of California, was a pioneer corporation, had by themselves and through the instrumentality of the Contract and Finance Company, of which they were the principal stockholders, contracts with the Railroad Company and other large transactions connected with it by means of which they had received large amounts of money and property as profits. It was claimed that such contracts were void and that the property so received was equitably the property of the Central Railroad Company of California, and that the plaintiffs therein had brought the actions, inasmuch as the corporation itself was unable to bring them, being under the control of authors of the fraud themselves. It was further declared by the plaintiffs in those actions that the only stock issued in a bona fide 1na.11-ner was about 7,150 shares, and belonged to the original issue of capital stock of $8,500,000, and that all other subsequent issues were fraudulent and void. In one action it was alleged that the amounts which had been wrongfully obtained and withheld came to the sum of $50,000,000. There is some evidence in the case from which a just inference could be drawn, that those actions were at the best but speculative operations to compel the defendants therein to settle with the plaintiff rather than to incur the risks to which such litigation would expose the market price of the stock and the value of the company’s property. As the result of the settlement of the Lambard suit, the Contract and Finance Company agreed to'pay a gross sum of $280,-000, and the notes of Huntington Hopkins, Stanford, Charles Crocker and E. B. Crocker were issued in payment thereof. It is upon this basis that the price of the plaintiff’s stock has been obtained. As a part, however, of that $280,000 the sum of $90,000 was given to one John B. Felton for his professional services. But the court did not permit the $90,000 claim to be considered. The defendants in those actions, as a part of the consideration of the moneys paid, received a discontinuance of the action and an agreement by which the parties thereto and the attorney should prosecute no more actions, and also certain receipts for money paid on stock subscribed for, but never issued, and 700 shares of the stock of the Central Pacific Railroad Company of California. The Braman suit was settled in the same way, except that the sum actually paid paid was $85,000 and the amount of the stock received was 200 shares.
Irrespective of the question whether the settlements covered the same kind of stock—that is to say, stock of the same issue sold by the plaintiff to the defendants—it seems to me that the transaction as proved does not show a purchase of stock within the meaning of the original contract *767 between these parties. What doubtless was in the minds of the contracting parties at the time of making the agreement was not purchases which the defendants in one way and another might be coerced into making, but such as would be had by private contract or in the public market. It is impossible from the evidence to discriminate between the amount which the defendants paid to get rid of embarrassing litigation and the sum which they paid for the stock of the plaintiffs in the California suits, or to say how much value was assigned to the agreement of John B. Felton not to engage in any further litigation of that kind.
Upon the assertion that the defendants did in fact pay a higher price for like stock, the affirmative was with the plaintiff. He was bound to adduce proper and sufficient evidence to show that under the original agreement between the parties the defendants had voluntarily paid a higher price than had been paid by them to himself.
It is doubtless true that the courts, as is contended by the learned counsel for the plaintiff, have the power to go back of all transactions, even those undertaken in the courts of law, which are devised for the purpose of evading or eluding the terms of a contract. But there is no evidence that the California suits were brought for the purpose of obscuring or hiding the purchase of that stock thereby obtained by the defendants.
The exceptions to the refusal to nonsuit the plaintiff and the exceptions to the charge of the learned judge are all embraced within the two propositions which have been above mentioned, and need separately no special comment.
The judgment should be reversed, a new trial ordered, costs to abide the event.
Brady, J., concurs in the result.
Daniels, J.
The evidence on which the plaintiff’s right to the damages recovered falls far short of supporting the verdict. On that ground it is necessary that there shall be another trial of the action. But whether the ineffectual effort to rescind the sale will deprive the plaintiff of the right to recover damages for the breach of the agreement is by no means clear. To complete the rescission, the concurrence of the defendant was as necessary as the election and demand of the plaintiff. A return of the stock was indispensable, and that the defendant refused to surrender, which prevented the rescission. Whether he can stand on that refusal and justify himself in it, and still assert that the contract had been rescinded, is certainly subject to very grave doubt, not requiring now to be settled. But on the other ground, I agree that there should be another trial, and therefore concur in the result.