Lewis P. Ross, Appellant, *v.* Chauncey C. Caywood and William J. Donovan, Respondents, Impleaded with Others.

*Fraudulent conveyance — facts which establish the fraud — duty of the Appellate Division where the decision does not find facts.*

To establish the responsibility of a vendee for the fraud of his vendor as against the latter's creditors, some actual knowledge or notice on his part of such fraud must be shown. Such knowledge or notice need not, however, be established by positive evidence, but may be inferred from the circumstances.

A hasty sale of the stock in trade of a judgment debtor, at about one-third of its value, concluded by the husband and agent of the debtor at a late hour of the same night in which the negotiations for the sale began, and immediately after an inventory had been taken disclosing its true value, and within twenty-four hours of the receipt of an inquiry from the judgment creditor concerning the financial condition of the debtor, to a mere money lender, presumably acquainted with the financial affairs of the debtor, who transfers it, under an agreement to share in the profits realized from its sale, to a business acquaintance, who has already purchased goods at a prior sale made by the agent in a similar manner, justifies the conclusion that the sale was made with the fraudulent purpose of hindering and delaying the judgment creditor in the collection of his claim.

When the trial court renders a decision which does not state separately the facts found, the Appellate Division is required to review all questions of fact and of law and to award to either party such judgment as he may be fairly entitled to.

Appeal by the plaintiff, Lewis P. Ross, from a judgment of the Supreme Court in favor of the defendants Caywood and Donovan, entered in the office of the clerk of the county of Monroe on the 14th day of November, 1896, upon the decision of the court rendered after a trial at the Monroe Equity Term dismissing the plaintiff's complaint without costs.

*David Hays*, for the appellant.

*James Wright*, for the respondents.

Adams, J.:

It is proper to state by way of preface to our review of this case that, the trial court having rendered a decision which does not state separately the facts found, this court is required, under the existing rules of practice, to review all questions of fact and of law and award to either party such judgment as he may be fairly entitled to.

(Code Civ. Proc. § 1022; *New Britain Nat. Bank* v. *Cleveland Co.*, 91 Hun, 447; *Harding* v. *Elliott*, Id. 502.) The plaintiff, who is a judgment creditor of the defendant Georgia S. Holcomb, brings this action to set aside as fraudulent and void a pretended sale of a stock of merchandise made by the judgment debtor to the defendant Caywood, who subsequently agreed with his co-defendant Donovan, that if he would sell the goods thus purchased he would give him a share of the profits realized from such sale.

The defendant Holcomb suffered judgment to be taken against her by default, thereby virtually admitting that in the attempted transfer of the goods in question to her co-defendant she was guilty of the fraud charged against her.

The learned trial justice felt constrained, however, to dismiss the plaintiff's complaint as against the defendants Caywood and Donovan for the reason that, in his opinion, the evidence in the case failed to establish actual notice or knowledge upon their part of any fraudulent intent upon the part of Mrs. Holcomb.

After a careful examination of the record, we find ourselves unable to adopt this view of the case, or to escape the conviction that the circumstances attending the transactions in which these two defendants participated and from which they seek to derive some profit, were so presumptively and palpably fraudulent as to render it absolutely impossible for them to claim, with any degree of sincerity, that they were not apprised of their true character.

It is quite apparent to our minds that the learned trial justice was by no means convinced of the *bona fides* of the defendants Caywood and Donovan; but that he was influenced in his determination by the case of *Parker* v. *Conner* (93 N. Y. 118), which he seems to have regarded as conclusive upon the question of notice. We are inclined to think, however, that the doctrine of that case must be carried to an extreme length in order to relieve these defendants from the inference which is fairly warranted by their relation to the transactions upon which the allegation of fraud is founded. For, while it does unquestionably require that before a vendee can be held responsible for the fraud of his vendor, it must be shown that he had some actual knowledge or notice of such fraud, it expressly recognizes the rule which has long obtained, that knowledge or notice, in order to be deemed direct and actual, need

not be established by positive evidence, but may be inferred from circumstances like any other fact. (*McNally* v. *City of Cohoes,* 127 N. Y. 350.)

This case seems to furnish a very excellent illustration of the rule just adverted to, as well as of the necessity which almost invariably exists for its application in actions involving the investigation of fraudulent transactions, where, from the very nature of things, it is impossible to establish the fraud in any other manner, and a brief review of some of the uncontradicted facts of the case will satisfactorily demonstrate the correctness of this assertion.

As has already been stated, the defendant Holcomb admits the charge of fraud so far as she is concerned by suffering default in the action, and we are unable to discover that any one connected with the case has had the temerity to even suggest that in disposing of her stock of goods to the defendant Caywood she was actuated by any other motive than a desire to cheat the plaintiff and obtain what little money she could for her own use.

So far as appears she owed no debts to any considerable amount except the one she was owing the plaintiff, and no creditor, save one to whom she was indebted in the insignificant sum of fifteen dollars, was pressing her for settlement. On the 14th day of February, 1896, her indebtedness to the plaintiff amounted to the sum of about $1,500, and upon that day her husband, who conducted the business for his wife, and who, it is but fair to say, appears to have furnished the inspiration for the fraud which was subsequently perpetrated, received a letter from the plaintiff requesting a statement of his wife's financial condition. Immediately upon receipt of this letter Holcomb endeavored to find some one who would purchase his wife's stock of boots and shoes, and in the evening of the same day he applied to the defendant Caywood, who was a money lender, and had never engaged in the shoe business. Holcomb represented to Caywood that his wife's stock would inventory at cost at about $2,000 or $2,100, and offered to sell the same for $1,000. Within half an hour after negotiations were thus opened he had agreed to dispose of the stock to Caywood for $850, and at about eleven o'clock of the same evening, in company with the defendants Caywood and Donovan, he began taking an inventory,

which was continued until about two o'clock in the morning, when it was discovered that the stock inventoried at the sum of only $1,835 instead of the amount anticipated. When this fact was ascertained, and it was made apparent that Holcomb was determined to sell the goods at any price he could get for them, Caywood took advantage of the situation and insisted that he would give but $650 for the same.

Immediately upon this proposition being made, Holcomb rushed up to his wife's room over the store, informed her of Caywood's last offer, and in a short time returned and accepted the same. The fraud was thereupon consummated through the medium of a bill of sale, which was executed before the parties separated.

At the time of the trial it appeared that $1,083 had been realized from the sale of the stock thus transferred, and that there still remained about $600 worth of goods unsold, so that Caywood actually obtained the stock for about thirty-five cents on the dollar.

It was further made to appear by evidence quite convincing that one, if not both, of the defendants knew that Holcomb bought goods of the plaintiff; that the plaintiff's monogram appeared upon all, or nearly all, of the boxes in the store in which the goods were kept; that Donovan stated to the plaintiff that Holcomb had been in such transactions before, and that when he failed the last time, he (Donovan) had bought his stock in substantially the same manner.

Weedsport is a small village; Caywood had lived there and been acquainted with Holcomb and his wife for many years. It is altogether probable, therefore, that he was acquainted with their financial standing and the extent and character of their business, and, presumably, he also possessed some knowledge of the motives which generally underlie and govern human conduct.

Now it may be conceded that no one of the circumstances which surrounded this transaction would, of itself, have been sufficient to establish either the fraudulent intent of Mrs. Holcomb, or any knowledge of such intent upon the part of her co-defendants. Nevertheless, when all these circumstances are considered in their true light and proper relation to each other, we are of the opinion that they certainly permit, if they do not actually force, the inference that this pretended transfer was conceived in fraud, and that its purpose was so apparent that no one who was a party thereto

can be permitted to escape the consequences of his guilty participation, by saying that he did not know or understand what any man of ordinary intelligence, under the same circumstances, ought to have known and understood.

In saying this, we are not unmindful of the rule that fraud may not, generally speaking, be imputed to a purchaser by reason of his omission to exercise active diligence in endeavoring to ascertain the motive of his vendor. But this rule, we apprehend, has no application to a case where the *indicia* of fraud are so patent as they are here.

As we have already suggested, Caywood certainly had good reason to suppose that some extraordinary motive impelled Holcomb to come to him in the evening with an offer to sell a stock of goods for about one-third of their actual value, and had he taken the precaution to make the slightest inquiry as to Mrs. Holcomb's financial condition, he would probably have learned what that motive was. But this he failed to do; he simply satisfied himself that there were no liens upon the stock, and then made the purchase.

In these circumstances we are clearly of the opinion that it cannot be said that he acted in good faith, or that he is entitled to any protection as against the creditors of his vendor. On the contrary, our conclusion of the whole matter is: (1) That the defendant Holcomb executed the bill of sale of the goods in question to the defendant Caywood with the fraudulent purpose of hindering and delaying the plaintiff in the collection of his claim against her; (2) that the defendant Caywood purchased such goods with notice or knowledge of his vendor's fraudulent purpose; and (3) that whatever may have been the relation of the defendant Donovan to the transaction in question, he possessed sufficient notice or knowledge of its fraudulent character to deprive him of the right to reap any benefit therefrom.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be, and the same hereby is, reversed, with costs; that the bill of sale executed by the defendant Georgia S. Holcomb to the defendant Chauncey C. Caywood, dated February 14, 1896, be declared fraudulent and void as against this plaintiff; that any subsequent agreement entered into between the defendants Caywood and Donovan relative to the property mentioned in

such bill of sale be likewise declared fraudulent and void as against this plaintiff; that the defendants Caywood and Donovan account to the plaintiff for the property received by them in consequence of such bill of sale; and that to that end James R. Davy, Esq., of the city of Rochester be and he is hereby appointed a referee to ascertain and report the value of the property thus attempted to be transferred; and that upon the filing of the report of said referee the plaintiff be at liberty to apply to the Special Term for such further judgment as may be advised.

All concurred.

Judgment reversed, with costs to appellant, and judgment directed in accordance with the opinion of ADAMS, J., to be settled by him.