(91 App. Div. 116.)

## MULTZ v. PRICE et al.

(Supreme Court, Appellate Division, First Department. February 5, 1904.)

1. APPEAL—REVIEW OF SHORT-FORM DECISIONS.

Under the express provisions of Code Civ. Proc. § 1022, prior to its amendment by Laws 1903, c. 85, p. 237, where the trial court enters its decision in short form the Appellate Division is required to review all questions of fact and law, and may grant such judgment to either party as the facts warrant, without ordering a new trial.

2. FRAUDULENT·CONVEYANCES—REPRESENTATIONS AS TO OWNERSHIP—ESTOPPEL TO DENY.

Where a wife is held out to be the owner of property, and another is thereby induced to perform labor and services on the strength of her ownership, the husband and wife will not be heard to deny the wife's ownership by any secret arrangement between them.

3. SAME—SOLVENCY OF WIFE—EVIDENCE—SUFFICIENCY.

In a suit to set aside a conveyance to a husband by his wife, as fraudulent, evidence *held* insufficient to support a finding that defendant wife was solvent after making the conveyance.

4. SAME—INDEBTEDNESS OF WIFE TO HUSBAND—EVIDENCE—DEALINGS WITH PROPERTY.

Where a husband was actually the owner of property, had paid the consideration therefor, and had the title vested in his wife for his own purposes, he could not, by any advances made or dealings had on account of the property, create an indebtedness in his favor against his wife.

5. SAME—CONSIDERATION—EVIDENCE—SUFFICIENCY.

In a suit to set aside a conveyance to a husband by his wife as fraudulent, evidence *held* insufficient to sustain a finding that the husband paid the wife a consideration for the transfer.

6. SAME—CONVEYANCE HELD FRAUDULENT.

A voluntary conveyance made by a wife to her husband, leaving her insolvent, was fraudulent and void as against one who, relying on the wife's ownership of the property, had performed labor thereon.

Appeal from Special Term, New York County.

Action by Solomon Multz against Lena Price and Moses Price. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

For former opinion, see 81 N. Y. Supp. 931.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Jacob Manheim, for appellant.
William Klingenstein, for respondents.

HATCH, J.  The decision of the learned trial court was in the short form authorized by the provisions of section 1022 of the Code of Civil Procedure prior to its amendment in 1903 (chapter 85, p. 237, Laws 1903).  The decision was rendered prior to the time when the amendment of 1903 took effect, and consequently was then authorized to be made in that form.  In review of the decision, therefore, this court is required to review all questions of fact and law, and may grant such a judgment to either party as the facts warrant, without ordering a new trial.  Harding v. Elliott, 91 Hun, 502, 36 N. Y. Supp. 648; Johnstone v. O'Connor, 21 App. Div. 77, 47 N. Y. Supp. 425, affirmed in 162 N. Y. 639, 57 N. E. 1113.  It therefore becomes essential, in the consideration of this case, to carefully examine the evidence which was developed upon the trial.  The case has been twice tried.  Upon the former trial the plaintiff had a judgment declaring the conveyance sought to be set aside to be fraudulent and void as against him.  Upon appeal to this court, however, the judgment was reversed for error committed in the reception of evidence.  The defendants had been examined in proceedings supplementary to execution issued against the wife, Lena Price.  She had testified upon such examination that the conveyance made by her was voluntary, and that her husband, Moses Price, gave no consideration for the transfer.  It was held that this evidence while good as against the wife, was not good as against the husband, and, as it had been received generally, without limiting its effect and operation to the wife, it constituted

error, for which the judgment was reversed. Multz v. Price, 82 App.
Div. 339, 81 N. Y. Supp. 931. Upon the present trial such examina-
tion was not introduced in evidence against either party. It is clear
that it was perfectly competent testimony against the wife, and this
court so said upon the former appeal; and it might have been received
in evidence against her, had it been offered. It contained a statement
which bore directly upon a vital point in the case, had been made un-
der the sanctity of an oath, and, had it been offered as against the
wife, might have furnished a controlling element in the case. As,
however, it is not now before us, and was not before the learned court
below, it may not be considered in reaching our conclusion upon the
present record.

This action was brought by a judgment creditor of the wife to set
aside and have declared void a deed made by her to her husband which
conveyed the premises 220 Madison street, in the borough of Manhat-
tan. The plaintiff is a carpenter and builder, and was requested by
the husband to do some repairs on the premises in question. At that
time he asked the husband who owned the premises, and was informed
by him that his wife was the owner. Thereupon the plaintiff per-
formed the work upon these premises, and, not being paid therefor,
he brought an action against the wife for the value of his work, labor,
and services, and recovered a judgment therefor in the City Court of
the city of New York for $415.60 upon the 9th day of April, 1901.
Execution was issued upon this judgment, and returned unsatisfied.
The action in which the judgment was obtained was brought on or
about the 22d day of August, 1899, the complaint being verified on
that day, and the summons bears the same date. The deed by which
the wife conveyed the premises to her husband bears date August 18,
1899, but was not recorded until August 25, 1899, after the commence-
ment of this action. The acknowledgment was taken before a son
of the defendants, who was a notary public, and it bears the same date
as the deed. The defendants in this action answered separately, and
each avers that the conveyance was made for a valuable consideration
moving from the husband to the wife, and each denies that the con-
veyance was made fraudulently, or for the purpose of cheating or de-
frauding creditors. The plaintiff testified that, two or three days after
the action in the City Court was commenced, he met the husband,
who said to him that he saw that the plaintiff had sued his wife, and
then he stated:

"Well, that would not do you no good. That would not be no good. Even
if you will get a judgment, you will not get a cent."

Plaintiff asked him:

"'What do you mean by that? Don't your wife own the property 220 Madi-
son street?' 'Well,' he says, 'I will tell you. You know very well that she
don't own anything else besides that property, and, before you look around,
you will find that I will own the property; and I will advise you to settle
that matter. Take $100. I will pay you every three months $25, and, if you
don't take that, you will get nothing, and you will feel sorry.'"

Plaintiff replied that he could not afford to take it. The defendant
Moses Price states in respect to this conversation that he had a conver-
sation with the plaintiff at that time in which he made complaint about

the work, that he left him, and that was all the conversation he had with him. He does not, however, in terms, deny the statements attributed to him by the plaintiff, or that he had a conversation at that time. It stands, therefore, as undisputed, that the plaintiff performed work, labor, and services upon the premises in question, for which he has not been paid; that he performed such services in reliance upon the fact that the wife was the owner of the property, and responsible for the debt. The property still remains in the family, and, as the equities are strongly in favor of the plaintiff, he should not be defeated in his attempt to secure payment unless it be shown by strong and controlling proof that the transaction which effects such result is honest and free from fraud.

The learned court below was impressed with the view, and so found, that at the time of the conveyance the plaintiff had failed to prove that the wife was insolvent; and, further, that the conveyance from the wife to the husband was for a good and sufficient consideration, and that the conveyance was valid and without fraud. It is a salutary rule which courts invoke that business transactions between husband and wife, which are claimed to be fraudulent as against creditors, will be scrutinized with the utmost care, for the reason that the relation between the parties is so close and intimate that fraud may not only be easily perpetrated, but easily and carefully concealed. White v. Benjamin, 150 N. Y. 258, 44 N. E. 956; Taylor v. Klein, 47 App. Div. 343, 62 N. Y. Supp. 4. And where a person is held out as being the owner of property, and another is thereby induced to perform work, labor, and services upon the strength of such ownership, they will not be heard thereafter in denial of such fact by any secret arrangement existing between them; nor will courts be astute to find reasons in support of a transaction which defeats a just debt and an honest claim. Fritz v. Worden, 20 App. Div. 241, 46 N. Y. Supp. 1040. It appeared upon this trial that the plaintiff, in order to establish that the wife was insolvent, was, in the main, required to make use of the testimony of the husband. Upon this subject he testified (speaking of a time immediately prior to the execution of the deed):

"At that time I did not know that she had any property of any kind outside of 220 Madison street. To my knowledge, she had no other property of any kind at that time, except 220 Madison street. She had nothing at that time, to my knowledge, except the premises 220 Madison street. That is right. And so, in order to raise money to pay the interest on this property, I took a deed."

And again:

"At the time this suit in the City Court was brought against my wife, she had no other property, and she had nothing except this Madison street property, as I already testified to. That is a fact."

And further he testified:

"At that time I did not know that she had any money. She may have had it. I do not know what my wife had. She had money. I could not say. I don't know that my wife got any money from anybody, outside of what I gave her for household expenses. My wife never got any property from anybody, outside of the property that I mentioned, that I know of. I don't know that my wife had any money or property when I married her."

And in speaking of the reason why he put this property in the name of his wife, he says:

"Because there were many liens upon it, I did not want to have it in my name."

In further speaking upon this subject, and how he came to take the deed, the husband testified that he had to raise some money to pay $1,000 interest on the Madison street property, and he said:

"I asked my wife whether she had any money to pay the interest with. She says she has not got it; she does not want to go any further with the house. She wants me not to go any further. She said she had no money to pay any interest. She says she has not got it; she would not give it to me. She said she had no money to pay the interest. I don't know whether she had any money then, until I found out later on. I found out six months ago. But at that time I thought she had no money. I thought she had none. I thought she had no money at that time."

Nowhere in the case is it disclosed that she had other property or money at the time of this transfer. The husband intimates in his testimony that he subsequently learned that his wife at this time had money in the house, but such testimony is vague, indefinite, and unreliable. The wife, while available as a witness, did not appear upon the trial, although during its progress she was at home, and the husband left her there. We think the positive statement, therefore, that the wife claimed that she had no money with which to pay interest upon the property, and the positive statement of the husband that the Madison street property was the only property which the wife owned, or which she had, and the shadowy, vague claim that his wife had falsified in her statement that she had no money, is insufficient to overthrow the positive and direct statements, in the absence of any testimony given by the wife, or of its being shown that she had money, its amount, and where it was, or other property. The finding of fact, therefore, by the learned court, that the wife was solvent after the conveyance, is not supported by the testimony. On the contrary, it satisfactorily appears that all of the property of which she was possessed at the time of the conveyance was the property which she conveyed; and, having nothing else, it produced in her a condition of insolvency immediately the transfer was made. But further than this, it appears without dispute that she was then indebted to the plaintiff for the amount of this judgment, and that, assuming for the purpose of this statement that there is truth in it, she owed her husband upwards of $9,000. The equity in this property which she owned at the time of the conveyance was conceded to be $3,500. Under this proof, therefore, the wildest stretch of imagination will not enable us to find that she was solvent at the time of the transaction or after. Even the husband does not claim that she had either money or property with which to discharge his indebtedness, aside from the house. Certainly she did not have anything with which to pay this judgment, as satisfactorily appears. In consequence of which, by the conveyance it is an undisputed fact that she must have been insolvent.

We come now to consider whether the evidence justifies a finding that the conveyance to the husband was made for a valuable consideration, and upon this subject the testimony rests in statements made by

the husband, coupled with inferences which are fairly deducible from the transaction itself. The deed recites a nominal consideration only. When examined in supplementary proceedings, the husband testified:

"This property never belonged to my wife, but belonged to me, in fact. I meant that I had more interest than my wife. I testified this property never belonged to my wife, but belonged to me, in fact, because I had more equity in it. I testified in supplementary proceedings also, that, she merely held the record title for me. And I also testified in supplementary proceedings as follows: 'I did not give my wife anything for this Madison street property. * * * When this property was conveyed to me by my wife, we said nothing further than what I told her with respect to raising a mortgage on the property; and I said I wanted her to convey it to me for that purpose, saying I had laid out so much money on it.'"

If this statement be taken as true, it would establish that the conveyance was voluntary upon the part of the wife, would correspond with the statement of consideration contained in the deed, and would establish that in fact nothing was paid by the husband to the wife for the conveyance; and it necessarily follows that the finding of the court that there was a good consideration would be without evidence to sustain it. It became necessary, therefore, for the husband to meet this condition, and show a consideration; and this he did by testifying that some time prior to the deed, the date of which he did not give, and when he wanted some money from her, and she refused, he asked her for an accounting; that his daughter, now deceased, took an accounting, which she had kept, and that there was then nearly $10,000 coming to him; that thereafter he applied to Mr. Klingenstein for a loan, and was informed by him that, if he obtained a deed of the property, he could procure a loan upon it for what he wanted; and that thereupon, in consideration of the indebtedness, the deed was executed. No account was produced, but the husband did produce quite a large number of checks, none of which were drawn in favor of the wife; but all of which were drawn in favor of various parties for various purposes in connection with the Madison street property and other properties, and these items the husband claimed to have advanced upon the request of the wife; and they went to make up the claimed consideration of $9,000 or $10,000. The husband testified that during this whole period of time when he was advancing money, beginning some time in the early 90's, and continuing down to the time of the transfer, he had control of the properties, rented the same, collected and used the rents, and never accounted therefor to his wife, nor was he asked to make any accounting. The Madison street property was rented during this period for $3,500 and $4,300 a year. It is evident that the rents which this property produced during the period when the husband was paying the bills largely exceeded the aggregate of all the amounts which he testified he laid out and expended on account of the property for the benefit of his wife. So that, if the wife be regarded as the real beneficial owner of the property, it is quite clear that the husband was reimbursed for all his advances on account of his wife, and no indebtedness from her to him could be predicated thereon. But aside from this consideration, and among the many contradictory statements which the husband made in his testimony, runs a thread which is perfectly clear and plain—that

the husband was the owner of the property. He testified many times that he was always the owner of the property, paid the consideration, and had the title thereto vested in his wife for his own purposes; he leased it, repaired it; traded with it; exercised acts of ownership in the completest form with respect not only to this property, but to all other property; and testified over and over again that he owned the property, and that his wife had no interest in it, but simply held the title for him. We have little hesitancy, after reading the testimony, in concluding that such was the fact. Consequently all of the advances which were made, and all of the dealings in connection with the property, could not create an indebtedness in his favor against his wife. And whether the purpose was to convey the title to him in order that he might raise money upon the property, or to avoid the payment of plaintiff's judgment, in result it operated as a fraud upon the plaintiff, as it left the wife with no property, and the services for which the judgment was obtained were performed in reliance on her ownership. While it is true that Mr. Klingenstein testified that the husband stated to the wife in his presence that she was indebted to him in between $9,000 and $10,000, such statement did not operate to establish the indebtedness; and we think that no one can fairly and candidly read this testimony, and fail in reaching the conclusion that the claimed indebtedness of the wife to the husband was an after-thought, made necessary by the pressure of this litigation. The actual transaction, coupled with the contradictory claims and statements of the husband, his unqualified utterance at one time that he owned the property, and his wife did not own it at all; that he paid her nothing by way of consideration for the deed, and at another time that his wife was the owner, and that he dealt with the property as her agent, and, in dealing with it, created the obligation against the wife, of which he presents no account—makes the case of a bona fide consideration for this transfer so palpably untrue that it ought not to be sustained. The wife is not called as a witness to substantiate a single statement, and very likely for the reason that she could not testify truthfully and sustain it. Under such circumstances, the transaction ought not to be permitted to stand, and thereby defeat an honest creditor in the collection of a just claim.

If we are correct in the conclusions which we think are fairly to be drawn from this testimony, it needs no authority to sustain the view that the conveyance is fraudulent and void as to creditors.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide event. All concur.